UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————————
                                )
ADVANCE DX, INC.,               )
                                )
            Plaintiff,          )
        v.                      )       CIVIL ACTION
                                )       NO. 24-10595-WGY
YOURBIO HEALTH, INC.,           )
                                )
            Defendant.          )
—————————————————————————

YOUNG, D.J.                                October 3, 2024

**MEMORANDUM AND ORDER**

## I.   PROCEDURAL HISTORY

Advance Dx, Inc. ("Advance") filed this suit against its competitor, YourBio Health, Inc. ("YourBio"), on March 8, 2024, requesting damages and injunctive relief.  Compl. 12, ECF No. 1. Advance brings six claims: (1) defamation (Count I); (2) false advertising in violation of section 43 of the Lanham Act (Count II); (3) tortious interference with advantageous business relationships (Count III); (4) commercial disparagement (Count IV); (5) unjust enrichment (Count V); (6) unfair trade practices in violation of chapter 93A, section 11 of the Massachusetts General Laws (Count VI).

YourBio moved to dismiss Advance's complaint for failure to state a claim upon which relief can be granted on May 17, 2024. See Def.'s Mot. Dismiss, ECF No. 16; Def.'s Mem. Supp. Def.'s

Mot. Dism. ("Def.'s Mem."), ECF No. 17; Def.'s Reply Supp. Def.'s Mot. Dism., ECF No. 30.  Advance timely opposed YourBio's motion.  <u>See</u> Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 25.

Having heard the parties' arguments at the motion session on July 24, 2024, this Court took the matter under advisement. <u>See</u> Electronic Clerk's Notes, ECF No. 31.  As Advance states a plausible case for relief as to all of its claims (Counts I, II, III, IV, and VI) except the unjust enrichment claim (Count V), this Court now **GRANTS** YourBio's motion to dismiss **in part**, as related to the unjust enrichment claim.  Otherwise, YourBio's motion to dismiss is **DENIED.**

## II.  FACTS PLAUSIBLY PLED

Advance and YourBio, competitors in the market for at-home medical testing devices, sell and market products that test patients' level of anti-Mullerian hormone ("AMH").  Compl. 1. Advance manufactures a card ("Card") that is used to collect a blood sample obtained from a patient's lanced fingertip.  <u>Id.</u> ¶ 9; <u>id.</u>, Ex. 1, BioMed's Study 2, ECF No. 1-2.  YourBio manufactures a device ("TAP II") that is used to collect a blood sample by attaching to the back of a patient's arm and piercing capillaries close to the skin's surface with microneedles. Compl. ¶ 12; BioMed's Study 2.

In 2022, the parties' products were the subject of a study ("Study") conducted by BioMed Central Ltd ("BioMed").  Compl. 1, ¶ 13.  The Study is based on the data collected from the medical trial conducted by an independent laboratory BioAgilytix.  Id. ¶ 17.  Participants in the medical trial had their blood collected with the use of the Card, TAP II, and by conventional venipuncture.  See id. ¶ 16; BioMed's Study 1.  The results as to the participants' AMH level obtained with the use of the Card and TAP II were analyzed and compared with the results of the venipuncture blood samples.  See BioMed's Study 1.

After processing the data, BioMed imposed an internal control, calculated based on the Study's data, to normalize Advance's results to the venipuncture instead of using the recommended internal control provided in Advance's guidelines. Compl. ¶ 18.

On September 1, 2022, BioMed published the Study where it concluded that YourBio's testing device TAP II was more accurate, superior, and has stronger consumer preference than the Card manufactured by Advance.  Id. ¶¶ 13, 22; see BioMed's Study 1, 8-9.

On November 2, 2022, YourBio provided PR Newswire with the Study and convinced PR Newswire to publish an article indicating the TAP II's superiority as an AMH measuring device ("Article"). Compl. ¶ 25; id., Ex. 2, YourBio Health Delivers Superior Method

At-home Serum Anti-Mullerian Hormone Testing ("PR Newswire's Article"), ECF No. 1-3.

On August 21, 2023, YourBio re-published the Study at its booth at the Next Generation Dx Summit and on other occasions. Compl. ¶ 22, 27.  Also, YourBio repeatedly promoted the Study to consumers, industry professionals, and third parties at trade shows and in YourBio's marketing materials.  Id.

In September 2023, upon learning that BioMed had used a simulated internal control instead of the internal control recommended by Advance, BioAgilytix stated that any discordance noted in the Study may be due to BioMed's failure to follow Advance's instructions for the Card, and not due to any fault of the Card.  Id. ¶¶ 19-20.

Advance alleges that due to BioMed's failure to follow Advance's instructions, any discordance between the Card and venipuncture –– the latter being the most accurate testing method -- noted in the Study is factually inaccurate and misleading.  Id. ¶ 21.  Advance further alleges that the Study's discussion and conclusions, which rely on the stated discordance between the Card and venipuncture, are incorrect and disparaging.  Id. ¶ 22.

## III. ANALYSIS

### A.   Legal Standard

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts "draw every reasonable inference" in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000), but they disregard statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (brackets, ellipsis, and quotations omitted).

The First Circuit set out a two-step inquiry to determine whether the plausibility requirement is satisfied. Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 45 (1st Cir. 2012). "First, 'the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. University of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual content permits 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Sepulveda-

Villarini v. Department of Educ. Of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

"A claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Id. at 44, 45. The plaintiff's factual allegations, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini, 628 F.3d at 29. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Security & Exch. Comm. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).

**B.  Application**

The issue before this Court is whether the complaint states plausible claims for relief against YourBio. For the reasons described below, this Court concludes that Advance states a plausible case for relief as to all of its claims (Counts I, II, III, IV, and VI) except the unjust enrichment claim (Count V).

**1.  Defamation (Count I)**

"To succeed on a defamation claim under Massachusetts law, a plaintiff must show that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss." Stanton v. Metro Corp., 438

F.3d 119, 124 (1st Cir. 2006); see White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004).

YourBio argues that the Study is a non-actionable scientific conclusion and statement of opinion and, thus, it does not contain statements actionable for defamation.  Def.'s Mem. 6-10.  Also, YourBio argues that Advance failed to plead that the Study is false.  Id. at 10-11.  For the reasons stated below, YourBio's arguments lack merit.

As stated above, Advance must show: (1) the existence of a publication, (2) that the publication was concerning Advance, (3) falsity of the publication, (4) that YourBio was at fault for the publication, (5) the capability of the publication to damage Advance's reputation in the community, and (6) that the publication caused economic loss or is actionable without proof of economic loss.  Stanton, 438 F.3d at 124; White, 442 Mass. at 66.

Here, after BioMed's initial publication of the Study, YourBio re-published the Study and used it at YourBio's booth at the Next Generation Dx Summit held on August 21, 2023.  Compl. ¶¶ 13, 22, 24, 27.  As the "publication element of defamation requires that the defendant communicate the defamatory statement to a third party," White, 442 Mass. at 66, YourBio satisfied this element by re-publishing the Study concerning Advance and presenting it to third parties during the mentioned summit.

[7]

YourBio's arguments that the Study is a non-actionable scientific conclusion and statement of opinion, reiterated by YourBio at the motion hearing on July 24, 2024, are of no effect to this conclusion, as further elucidated in this opinion.

"[T]o be actionable [for defamation], the statement must be one of fact rather than of opinion." Scholz v. Delp, 473 Mass. 242, 249 (2015). "'Statements of pure opinion are constitutionally protected.'" Id. at 249-50 (quoting King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987)). "'[T]here is no constitutional value in false statements of fact.'" Id. at 250 (quoting National Ass'n of Gov't Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 227 (1979)).

"[A] particular word or phrase ordinarily cannot be defamatory unless in a given context it reasonably can be understood as having an . . . objectively verifiable meaning." Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 129 (1st Cir. 1997). "[A] statement . . . is not actionable unless it contains an objectively verifiable assertion." Id. at 127.

"In determining whether a statement reasonably could be understood as fact or opinion, a court must 'examine the statement in its totality in the context in which it was uttered or published,' and 'must consider all the words used, not merely a particular phrase or sentence.'" Id. (quoting Cole v. Westinghouse Broad. Co., 386 Mass. 303, 309 (1982)). "Factors

to be considered include the specific language used; whether the
statement is verifiable; the general context of the statement;
and the broader context in which the statement appeared, . . .
as well as any cautionary terms used by the person publishing
the statement." Id. at 250-51 (quoting Milkovich v. Lorain
Journal Co., 497 U.S. 1, 9 (1990); Lyons v. Globe Newspaper
Co., 415 Mass. 258, 263 (1993)) (internal quotation marks
omitted).

Having argued that the Study is a non-actionable scientific
conclusion and opinion, YourBio refers to several non-binding
authorities, such as the Second, Third, and Seventh Circuits'
decisions in ONY, Inc. v. Cornerstone Therapeutics, Inc., Pacira
BioSciences, Inc. v. American Society of Anesthesiologists,
Inc., and Underwager v. Salter, respectively. See ONY, Inc. v.
Cornerstone Therapeutics, Inc., 720 F.3d 490, 497 (2d Cir.
2013); Pacira BioSciences, Inc. v. American Soc'y of
Anesthesiologists, Inc., 63 F.4th 240, 248 (3d Cir. 2023);
Underwager v. Salter, 22 F.3d 730, 736 (7th Cir. 1994).

In ONY, the Second Circuit rejected a defamation claim
based on conclusions presented in a scientific article. See
ONY, 720 F.3d at 497 (holding that "while statements about
contested and contestable scientific hypotheses constitute
assertions about the world that are . . . matters of verifiable
'fact,' for purposes of . . . the laws relating to . . .

[9]

defamation, they are more closely akin to matters of opinion"). ONY, however, is of no help to YourBio.  As the First Circuit held in Conformis, Inc. v. Aetna, Inc., in which the defendant in a futile attempt to get the disparagement claim dismissed also relied on ONY, "we must take into account the statement's context, including the medium in which the statement was published and the audience to which it was presented."[1] Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 534 (1st Cir. 2023).

Here, the medium is a scientific document that -- while initially published by BioMed with no obvious commercial purpose -- was re-published by YourBio to promote its TAP II devices. See Compl. ¶¶ 13, 24, 27.  Unlike a typical scientific journal, the medium in this case is not meant to communicate insights into matters of scientific debate, despite the fact that the Study may have been first published by BioMed for exclusively scientific reasons.

---

[1] Although the Conformis Court analyzed a product disparagement claim, its approach ought be applied to defamation claims considering the similarity between them.  See Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 529 (1st Cir. 2023) ("Product disparagement is similar to defamation but lacks a reputational harm element and makes greater demands as to the falsity of the statement[s], fault of the defendant and proof of damage.") (internal quotation marks omitted); see id. at 531 (stating that "the striking similarity between product disparagement and defamation . . . , would cause the [Massachusetts Supreme Judicial Court] to apply, in product disparagement cases, the same analytic modality that it has used in defamation cases.").

The audience is also not purely scientific.  Although the purpose of the Study may have been purely scientific, the purpose of the Study as it was re-published by YourBio was to communicate the superiority of TAP II devices over the Cards to customers or primarily to customers within a broader audience. See id. ¶¶ 24-25.

Therefore, as in Conformis, in which the First Circuit rejected the defendant's argument that its defamatory statement related to a scientific debate, this Court rejects YourBio's argument that the Study is a non-actionable scientific conclusion.  See Conformis, 58 F.4th at 534 (holding that the defendant "cannot take refuge in the hallowed halls of scientific debate").  Also like in Conformis, as the Study contains an objectively verifiable assertion, this Court rejects YourBio's argument that the Study is a non-actionable opinion. See id. at 535.

Having followed Conformis, requiring an inquiry into the context of the allegedly defamatory statements, including their medium and audience, this Court does not need to proceed further and analyze Pacira and Underwager, which express principles and analyses similar to those in ONY.  See Pacira, 63 F.4th at 248 (holding that the "critiques about [scientific articles'] data and methodology may be the basis of future scholarly debate, but they do not form the basis for trade libel under [the applicable

law and] conclude[ing] otherwise would risk 'chilling' the natural development of scientific research and discourse"); Underwager, 22 F.3d at 736 ("Scientific controversies must be settled by the methods of science rather than by the methods of litigation.").

Thus, considering that the Study was concerning Advance and was re-published and presented by YourBio to third parties during the Next Generation Dx Summit, elements (1) and (2) of the test articulated by the Stanton Court are met. See Stanton, 438 F.3d at 124.

Element (3) of the test is also met as Advance alleges that the Study contained false statements. Compl. ¶¶ 24, 27, 29, 32, 33. Hence, YourBio's argument that Advance failed to plead falsity of the Study has no merit. See Def.'s Mem. 10-11.

YourBio's argument that the Study cannot be false only due to BioMed's use of a simulated internal control instead of the internal control recommended by Advance is rejected by the Court as actual falsity or correctness of the Study is beyond this Court's consideration at the motion to dismiss stage. See Compl. ¶ 18; see also Def.'s Mem. 11. As long as falsity of the Study is pled in the complaint, it is enough to survive YourBio's motion to dismiss.

Regarding the level of fault required to prove a defamation claim under Massachusetts law, as this Session of the Court held

in Wofse v. Horn, it "varies between negligence (for statements concerning private persons) and actual malice (for statements concerning public officials and public figures)."  Wofse v. Horn, 523 F. Supp. 3d 122, 133–34 (D. Mass. 2021) (citing Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003)).

Advance, as a corporation, is not a public official. Although Advance characterizes itself as a leading provider of AMH testing products with an established reputation, Advance is not a public figure either.  See Compl. ¶¶ 9-10.  Advance has not achieved the required pervasive fame or notoriety to become a public figure.  See McKee v. Cosby, 874 F.3d 54, 61 (1st Cir. 2017) ("An individual becomes a 'general-purpose' public figure if he 'achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.'") (citing Gertz v. Robert Welch, 418 U.S. 323, 351 (1974)).  This Court can make this determination.  See Pendleton v. City of Haverhill, 156 F.3d 57, 68 (1st Cir. 1998) (holding that "the question of whether a defamation plaintiff is a public figure is properly resolved by the court, not by the jury"); Hi-Tech Pharms., Inc. v. Cohen, 277 F. Supp. 3d 236, 246 (D. Mass. 2016) ("Whether a plaintiff is a public figure is a matter of law.").

Hence, Advance is a private entity and, therefore, only needs to plead that YourBio was negligent in the re-publication

[13]

of the Study concerning Advance.  Advance does not have to plead actual malice behind YourBio's actions.  Despite that, Advance alleges that YourBio was aware of the falsity of the statements contained in the Study.  See Compl. ¶ 36.  Thus, YourBio was at fault for the Study's re-publication, which satisfies element (4) of the test.

YourBio's assertion that the Study is not false and that YourBio did not have knowledge of its falsity because YourBio learnt about BioAgilytix's criticism of BioMed's method used in the Study's after YourBio re-published the Study is of no effect to the aforementioned conclusion at the motion to dismiss stage. See Def.'s Mem. 11-13.

As for the issue of whether Advance's reputation was damaged, Advance alleges that YourBio's re-publication of the Study has adversely and materially affected Advance's reputation in the community as a provider of accurate and reliable at-home AMH testing.  Compl. ¶¶ 33-34.  Having accepted this as true, YourBio's conduct, thus, was capable of damaging Advance's reputation in the community.  This satisfies element (5) of the test.

Advance also meets element (6) of the test.  As the Massachusetts Supreme Judicial Court held in Ravnikar, the following "types of statements are actionable without proof of economic loss: statements that constitute libel . . . and

[14]

statements that may prejudice the plaintiff's . . . business . .
. ."  Ravnikar, 438 Mass. at 630.  "If the statement comes
within one of these . . . exceptions, a plaintiff may recover
noneconomic losses, including . . . damage to reputation."  Id.

Considering Advance's assertion that it suffered a
reputational injury, that the statements contained in the Study
-- indicating the Card's inferiority and lower accuracy compared
to TAP II devices -- prejudice Advance's business, and that
Advance experienced pecuniary loss by being deprived of a market
of consumers it would otherwise have enjoyed, YourBio's actions
may have prejudiced Advance's business.  See Compl. ¶¶ 13, 22,
33-34; see BioMed's Study 1, 8-9.  Hence, YourBio's re-
publication of the Study is actionable without proof of
Advance's economic loss.

As all the elements of test articulated by the Stanton
Court are met, Advance properly asserts the defamation claim
(Count I), which ought not be dismissed.  See Stanton, 438 F.3d
at 124.

### 2.   False Advertising in Violation of Section 43 of the Lanham Act (Count II)

Section 43(a) of the Lanham Act in relevant part provides
that:

> [a]ny person who, . . . in connection with any goods .
> . . , uses in commerce any word, term, name, symbol,
> or device, or any combination thereof, or any . . .
> false or misleading description of fact, or false or

misleading representation of fact, which . . .[,] in
commercial advertising or promotion, misrepresents the
nature, characteristics, qualities . . . of his or her
or another person's goods . . . , or commercial
activities, shall be liable in a civil action by any
person who believes that he or she is or is likely to
be damaged by such act.

See 15 U.S.C. § 1125(a)(1)(B).

To prove a false advertising claim under section 43(a) of
the Lanham Act, a plaintiff must demonstrate that:

(1) the defendant made a false or misleading
description of fact or representation of fact in a
commercial advertisement about his own or another's
product; (2) the misrepresentation is material, in
that it is likely to influence the purchasing
decision; (3) the misrepresentation actually deceives
or has the tendency to deceive a substantial segment
of its audience; (4) the defendant placed the false or
misleading statement in interstate commerce; and (5)
the plaintiff has been or is likely to be injured as a
result of the misrepresentation, either by direct
diversion of sales or by a lessening of goodwill
associated with its products.

Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d

302, 310-11 (1st Cir. 2002); see also Clorox Co. P.R. v. Proctor

& Gamble Com. Co., 228 F.3d 24, 33 n.6 (1st Cir. 2000).

YourBio's argument against the false advertising claim,

like its arguments against the defamation and commercial

disparagement claims (Counts I and IV, respectively) are based

on the same notion that the Study is not a description of facts

but a non-actionable scientific opinion.  Def.'s Mem. 13-14.

This argument ought be rejected for the reasons stated in

Section III.B.1, supra.

YourBio also argues that Advance failed to assert that the conclusions contained in the Study are based on fraudulent data or do not follow the methodology discussed in the Study.  Def.'s Mem. 14.  While YourBio is correct that Advance alleges neither the fraudulent nature of the data underlying the Study, nor BioMed's failure to follow the methodology of BioMed's choice, this argument is without merit.  YourBio essentially invites the Court to analyze the issue of whether the Study is false considering that the data underlying the Study, in YourBio's view, was correct and the methodology was applied correctly. This argument is rejected because actual falsity or correctness of the Study is beyond this Court's consideration at the motion to dismiss stage, as stated in Section III.B.1, supra.

YourBio further argues that Advance failed sufficiently to plead any harm caused by YourBio's re-publication of the Study. See Def.'s Mem. 14.  This argument is analyzed within element (5) of the test articulated by the Cashmere Court and, as stated below, also has no merit.  See Cashmere, 284 F.3d at 310-11. While YourBio does not allege Advance's failure to satisfy elements (1) through (4) of the test, these elements are still addressed to determine whether Advance properly asserts its false advertising claim.

As for element (1) of the test, YourBio repeatedly promoted the Study to consumers, industry professionals, and third

parties at trade shows and in YourBio's marketing materials. Compl. ¶ 24.  Advance alleges that YourBio, by doing so, made false and misleading representations of fact about Advance's Cards.  Compl. ¶ 40.

Advance's allegation as to the falsity or misleading nature of YourBio's representation of fact -- the Card's inferiority and lower accuracy compared to TAP II devices -- is sufficient at the motion to dismiss stage.  See id. ¶¶ 22; BioMed's Study 1, 8-9.  YourBio's re-publication and promotion of the Study, indicating the Card's inferiority and lower accuracy compared to TAP II devices, essentially promoted YourBio's TAP II devices. This constitutes commercial advertising of TAP II devices and negative advertising of the Cards.  Thus, YourBio made a false or misleading representation of fact in its commercial advertisement about YourBio and Advance's products.  This satisfies element (1) of the test.

Regarding element (2) of the test, Advance alleges that the deception caused by the statements contained in the Study is likely to influence customer purchasing decisions.  Compl. ¶ 44. This is a legitime assertion.  YourBio's misrepresentation is likely to influence the purchasing decisions of both Advance's and YourBio's current and prospective customers, which makes YourBio's misrepresentation material.  This satisfies element (2) of the test.

Element (3) of the test is also satisfied as Advance alleges that the statements contained in the Study actually deceived or had a tendency to deceive a substantial segment of YourBio's audience.  Id. ¶ 43.  This assertion is sufficient at the motion to dismiss stage.

As to element (4) of the test, Advance fails explicitly toassert that YourBio placed the false or misleading statements contained in the Study or caused such statements contained in the Article to be placed in interstate commerce.  Despite this, Advance prevails on this element of the test considering that the Article was published on the Internet, causing its statements to enter interstate commerce.

YourBio re-published the Study at its booth at the Next Generation Dx Summit held in Washington, DC and repeatedly re-published the Study on other unspecified occasions.  Id. ¶¶ 24, 27.  Also, YourBio repeatedly promoted the Study to consumers, industry professionals, and third parties at unspecified trade shows and in YourBio's marketing materials.  Id. ¶ 24.  These assertions are of no help to Advance as they do not indicate a placement of YourBio's false or misleading statements in interstate commerce.  Advance does not assert that YourBio's conduct also occurred in Delaware, where it is incorporated, in Massachusetts, where its principal place of business is located, or in any other states or foreign countries.  Instead, Advance

only alleges that YourBio's conduct occurred in Washington, DC, which is insufficient to implicate interstate commerce for the purposes of the Lanham Act.

Advance, however, asserts that YourBio provided PR Newswire with the Study and got PR Newswire to publish the Article indicating the TAP II's superiority over the Card as an AMH measuring device.  Id. ¶ 25; PR Newswire's Article.  While Advance does not specify whether the Article was published by PR Newswire on the Internet, the Article itself, which is referred to by the complaint and is attached to it, indicates that the Article was published on PR Newswire's website.  See Compl. ¶ 26; PR Newswire's Article.

As this Court held in McGrath & Co., LLC v. PCM Consulting, Inc., "[c]ourts have generally held that when one operates a website containing alleged false or misleading statements, the party causes those statements to enter interstate commerce through the internet."  McGrath & Co., LLC v. PCM Consulting, Inc., No. CIV.A. 11-10930-DJC, 2012 WL 503629, at *6 (D. Mass. Feb. 15, 2012) (Casper, J.) (referring to Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n, 2010 WL 2218813, at *5 (E.D. Cal. June 1, 2010) (noting that "a website, transmitted worldwide over the Internet, falls within the scope of commerce lawfully regulated by Congress because the Internet has been deemed as 'instrumentality and channel of interstate

commerce'"); Healthport Corp. v. Tanita Corp. of Am., 563 F.
Supp. 2d 1169, 1180 (D. Or. 2008) (finding that by posting
advertisements on their websites, the party caused the false
statements to enter interstate commerce); MSP Corp. v. Westech
Instruments, Inc., 500 F. Supp. 2d 1198, 1217 (D. Minn. 2007)
(finding that the defendant caused the alleged false statements
to enter interstate commerce by posting the statements on the
internet)).

Additionally, in Boston Cab Dispatch, Inc. v. Uber Techs.,
Inc., this Court held that "[t]he transmissions by [the
defendant] of . . . false statements of association . . . over
the internet outside [Massachusetts] satisfies . . . the 'in
commerce' requirement [of the Lanham Act]."  Boston Cab
Dispatch, Inc. v. Uber Techs., Inc., No. CIV.A. 13-10769-NMG,
2014 WL 1338144, at *19 (D. Mass. Feb. 28, 2014) (Bowler, M.J.),
report and recommendation adopted in part, rejected in part, No.
CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014)
(Gorton, J.).

Considering that YourBio caused the publication of the
Article -- indicating the TAP II's superiority over the Card --
on the Internet and that the Article refers to the Study, whose
falsity is alleged by Advance, YourBio placed the false or
misleading statement in interstate commerce.  Thus, element (4)
of the test is satisfied.

Regarding element (5) of the test, contrary to YourBio's argument, Advance sufficiently pleads harm caused by YourBio's conduct.

The Supreme Court in <u>Lexmark International, Inc.</u> v. <u>Static Control Components, Inc.</u> articulated two requirements for statutory protection under the Lanham Act: a plaintiff's injury should fall within the "zone of interests" protected by the Lanham Act and should be proximately caused by a violation of the Lanham Act. <u>See</u> <u>Lexmark Int'l, Inc.</u> v. <u>Static Control Components, Inc.</u>, 572 U.S. 118, 129-34 (2014).

As for the "zone of interest requirement" in a suit for false advertising under section 43(a) of the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales." <u>Id.</u> at 131-32. Regarding the proximate-cause requirement, "the harm alleged [should have] a sufficiently close connection to the conduct the [Lanham Act] prohibits. Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." <u>Id.</u> at 133.

Having combined both requirements, the Supreme Court in <u>Lexmark</u> held that "a plaintiff suing under [section 43(a) of the Lanham Act] ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising . . . .". <u>Id.</u>

[22]

Here, Advance alleges that the deception caused by the statements contained in the Study and in the promotion of the Study has caused or is likely to cause damage to Advance. Compl. ¶ 44.  Advance also alleges that YourBio's re-publication of the Study has adversely and materially affected Advance's reputation in the community as a provider of accurate and reliable at-home AMH testing.  Id. ¶¶ 33-34.

Similar to the Lexmark Court's conclusion, Advance's allegation as to its reputational injury falls within the Lanham Act's "zone of interest."  See Lexmark, 572 U.S. at 137 (holding that the plaintiff's "alleged injuries -- lost sales and damage to its business reputation -- are injuries to precisely the sorts of commercial interests the [Lanham] Act protects").  Advance's assertion that its reputational injury was caused by YourBio's actions falls also within the Lanham Act's proximate-cause requirement.

Thus, Advance's allegation that YourBio's conduct caused harm -- reputational injury -- to Advance meets both of the Lexmark requirements and also satisfies element (5) of test. See id. at 129-34.

As all the elements of the test articulated by the Cashmere Court are met, Advance properly asserts the false advertising claim (Count II), which ought not be dismissed.  See Cashmere, 284 F.3d at 310-11.

[23]

###### 3. Tortious Interference With Advantageous Business Relationships (Count III)

In its response to the tortious interference with advantageous business relationships claim, YourBio raises the same argument it asserts against the false advertising and defamation claims (Counts I and II, respectively) -- YourBio denies Advance's allegation as to the falsity of the information contained in the Study. <u>See</u> Def.'s Mem. 15-16. As stated in Sections III.B.1 and III.B.2, <u>supra</u>, these arguments must be rejected because actual falsity or correctness or the Study is beyond this Court's consideration at the motion to dismiss stage. YourBio's other arguments are addressed below.

As this Court held in <u>Malden Transp., Inc.</u> v. <u>Uber Techs., Inc.</u>,

> a claim for tortious interference with advantageous business relationships requires four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result.

<u>Malden Transp., Inc.</u> v. <u>Uber Techs., Inc.</u>, 286 F. Supp. 3d 264, 281-82 (D. Mass. 2017) (Gorton, J.); <u>see also</u> <u>Koppel</u> v. <u>Moses</u>, No. CV 20-11479-LTS, 2020 WL 6292871, at *8 (D. Mass. Oct. 27, 2020) (Sorokin, J.).

As to element (1) of the test, Advance alleges that it had an expectation of advantageous relationships with its

prospective customers.  Compl. ¶ 47.  Although the complaint
pleads that Advance sells and markets the Card for testing the
patients' level of AMH, it does not plead that Advance was
involved in business relationships with its existing customers.
See Compl. 1.

In its opposition to YourBio's motion to dismiss, however,
Advance, referring to element (1) of the aforementioned test,
confirms that it had existing business relationships for
economic benefit with third parties.  See Pl.'s Opp'n 10.
Although Advance does not specify the nature of those
relationships, following Berezin, it can reasonably be inferred
that those relationships involved sale and purchase of Advance's
Cards.  See Berezin, 234 F.3d at 70 (holding that courts "draw
every reasonable inference" in favor of the plaintiff).

Thus, this Court concludes that Advance was involved in
business relationships and anticipated future involvement in
business relationships.  This satisfies element (1) of the test.

YourBio's argument as to Advance's failure to allege its
involvement in a specific –– not speculative –– anticipated
business relationship does not effect this conclusion.  While
YourBio is correct that Advance fails to plead its involvement
in a specific business relationship anticipated in the future,
element (1) of the test is still satisfied due to the presence
of Advance's business relationships with its existing customers.

See Malden Transp., Inc., 286 F. Supp. 3d at 82 (quoting Brown v. Armstrong, 957 F. Supp. 1293, 1305 (D. Mass. 1997) (Karol, M.J.), aff'd, 129 F.3d 1252 (1st Cir. 1997) ("To demonstrate an anticipated business relationship, a plaintiff must show that it 'had a probable future business relationship anticipating a reasonable expectancy of financial benefit.'"); id. ("A plaintiff cannot rely on speculative future relationships but must allege that a specific business relationship existed between itself and the potential customer.").

Regarding element (2) of the test, Advance asserts that YourBio had knowledge of Advance's expectation of business relationships.  Compl. ¶ 48.  This language can be interpreted as referring to Advance's prospective business relationships. The complaint does not need to plead YourBio's knowledge of Advance's relationship with its existing customers.

In its opposition to YourBio's motion to dismiss, however, Advance asserts YourBio's knowledge of the relationship between Advance and third parties.  See Pl.'s Opp'n 10.  Although Advance does not specify whether YourBio had knowledge of Advance's relationship with its existing or prospective customers, following Berezin, it ought be inferred that Advance meant YourBio's knowledge of both categories of Advance's customers: existing and prospective.  See Berezin, 234 F.3d at 70.

Thus, Advance successfully alleges that YourBio knew about Advance's business relationships with its existing and prospective customers.  This satisfies element (2) of the test.

Element (3) of the test articulated by the <u>Malden</u> Court contains two parts: intentional interference with the other party's business relationship and occurrence of that interference for an improper purpose or by an improper means. <u>See</u> <u>Malden Transp., Inc.</u>, 286 F. Supp. 3d at 281-82.

As for the first part of element (3) of the test, Advance alleges that YourBio intentionally interfered with Advance's expectation of business relationships by re-publishing the Study to consumers, industry professionals, and third parties at trade shows and in other marketing endeavors.  Compl. ¶ 49.  Like above, this language refers to Advance's prospective business relationships.

Although Advance does not assert YourBio's intention to interfere also with the existing relationships between Advance and its customers, Advance does allege that YourBio intended to injure Advance's business and reputation.  <u>Id.</u> ¶ 50.  Following <u>Berezin</u>, it ought be inferred that Advance meant YourBio's intention to interfere also with Advance's existing relationships.  <u>See</u> <u>Berezin</u>, 234 F.3d at 70.  This satisfies the first part of element (3) of the test.

[27]

As for the second part of element (3) of the test, Advance argues that YourBio's conduct was done for an improper purpose. Compl. ¶ 53.  In its opposition to YourBio's motion to dismiss, Advance added an allegation that YourBio also acted  with improper means.  <u>See</u> Pl.'s Opp'n 11.

"Improper means can include violating a statute or a common-law rule; engaging in . . . misrepresentation, or defamation; or using any other similar means to interfere with the plaintiff's relationships."  <u>Bruno Int'l Ltd.</u> v. <u>Vicor Corp.</u>, No. CV 14-10037-DPW, 2015 WL 5447652, at *15 (D. Mass. Sept. 16, 2015) (Woodlock, J.); <u>Smalley</u> v. <u>Munkacy</u>, No. CV 15-10055-RWZ, 2016 WL 11659686, at *3 (D. Mass. Aug. 16, 2016) (Zobel, J.).

Here, as YourBio's re-publication and promotion of the Study underline Advance's defamation, false advertising, commercial disparagement, and unfair trade practices claims (Counts I, II, IV, and VI, respectively), which are properly pled, YourBio's interference was done by an improper means.  <u>See</u> Section III.B.1; Section III.B.2, <u>supra</u>; Section III.B.4; Section III.B.6, <u>infra</u>.

"Improper motive includes ill will toward the plaintiff or some ulterior motive, based on the particular facts and circumstances of the case."  <u>Bruno Int'l Ltd.</u>, 2015 WL 5447652, at *16; <u>Smalley</u>, 2016 WL 11659686, at *3.

[28]

Here, while Advance does not allege the existence of
YourBio's ill will towards Advance, it alleges actual malice and
bad faith behind YourBio's re-publication of the Study.  Compl.
¶¶ 52-52.  Advance also alleges that by re-publishing the Study,
YourBio -- competing with Advance in the market for at-home
medical testing devices -- intended to bolster its own business.
Id. 1, ¶ 50.  At the motion to dismiss stage, these allegations
are sufficient to indicate the presence of ill will and ulterior
motive, and overall improper motive or purpose, behind YourBio's
actions.  This satisfies the second part of element (3) of the
test.

Thus, both parts of element (3) of the test are satisfied.

Regarding element 4 of the test, Advance alleges that as
the statements contained in the Study have a potential to
influence customer purchasing decisions, they deceived a
substantial segment of Advance and YourBio's existing and
potential customers.  Compl. ¶¶ 43-44.  Advance also alleges
that YourBio's deception has caused damage to Advance -- actual
pecuniary loss, loss of relationships with its customers, and
costs incurred to recover lost business and repair its
reputation.  Id. ¶¶ 44, 51.  This satisfies element (4) of the
test.

As all the elements of the test articulated by the Malden
Court are met, Advance properly asserts the tortious

[29]

interference claim (Count III). See Malden Transp., Inc., 286 F.
Supp. 3d at 281–82.

### 4.   Commercial Disparagement (Count IV)

"To make out a claim for product disparagement, a plaintiff
plausibly must allege that the defendant '(1) published a false
statement to a person other than the plaintiff; (2) 'of and
concerning' the plaintiff's products . . . ; (3) with knowledge
of the statement's falsity or with reckless disregard of its
truth or falsity; (4) where pecuniary harm to the plaintiff's
interests was intended or foreseeable; and (5) such publication
resulted in special damages in the form of pecuniary loss.'"
Conformis, 58 F.4th at 528 (quoting HipSaver, Inc. v. Kiel, 464
Mass. 517, 523 (2013)).  "[A] failure of proof as to even one
element [of the test articulated by the HipSaver Court] would be
sufficient to defeat a claim for commercial disparagement."
HipSaver, 464 Mass. at 524.

"Product disparagement is similar to defamation but lacks a
reputational harm element and makes greater demands as to the
'falsity of the statement[s], fault of the defendant and proof
of damage.'"  Id. at 529 (quoting HipSaver, 464 Mass. at 523
n.7).  Taking into account the similarity between product
disparagement and defamation, courts ought apply the same
approach to defamation and disparagements claims.  See id. at
531 (stating that "the striking similarity between product

disparagement and defamation . . . , would cause the
[Massachusetts Supreme Judicial Court] to apply, in product
disparagement cases, the same analytic modality that it has used
in defamation cases.").

YourBio's arguments as to Advance's defamation (Count I)
and commercial disparagement claims (Count IV) are the same.
See Def.'s Mem. 5-13.  Hence, the conclusion as to elements (1)
and (2) of the test articulated by the Stanton Court, used for
adjudication of the defamation claim (Count I), see supra
Section III.B.1, is applicable here as well.  See Stanton, 438
F.3d at 124.  Thus, elements (1) and (2) of the HipSaver test
are met.  See HipSaver, 464 Mass. at 523.

As Advance alleges YourBio's knowledge of the falsity of
the statements contained in the Study, element (3) of the
HipSaver test is also met.  See Compl. ¶¶ 36, 59.

Regarding element (4) of the HipSaver test, Advance alleges
that due to YourBio's re-publication of the Study, Advance
experienced pecuniary loss by being deprived of a market of
consumers it would otherwise have enjoyed.  Id. ¶ 58.  Advance
also alleges that the pecuniary harm to Advance's interests was
intended and foreseeable by YourBio.  Id. ¶ 61.  This satisfies
element (4) of the HipSaver test.

As Advance pled that the statements contained in the Study
have resulted in special damages in the form of pecuniary loss –

- - while those damages have not been calculated by Advance --, element (5) of the HipSaver test is met.

As all the elements of test articulated by the HipSaver Court are met, Advance properly asserts the commercial disparagement claim (Count IV). See HipSaver, 464 Mass. at 523.

### 5.  Unjust Enrichment (Count V)

As the First Circuit held in Guldseth v. Family Med. Assocs. LLC, to establish a claim for unjust enrichment, "[the plaintiff] is required to demonstrate: (1) that he 'conferred a measurable benefit upon' [the defendants]; (2) that he 'reasonably expected compensation from' them; and (3) that [the defendants] 'accepted the benefit with the knowledge, actual or chargeable, of [his] reasonable expectation.'" Guldseth v. Family Med. Assocs. LLC, 45 F.4th 526, 540 (1st Cir. 2022) (citing Finard & Co., LLC v. Sitt Asset Mgmt., 79 Mass.App.Ct. 226, 229 (2011)).

"Whether or not receipt of a benefit is unjust turns on the reasonable expectations of the parties." Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013).  "The fact that a person has benefited from another 'is not of itself sufficient to require the other to make restitution therefor.'" Liss v. Studeny, 450 Mass. 473, 479 (2008) (citing Keller v. O'Brien, 425 Mass. 774, 778 (1997)).  "An award of damages is only warranted when a person's reasonable expectations have been

defeated by 'unjust enrichment of one party and unjust detriment to the other party.'"  Ratchford v. Orange Lantern, Inc., No. CV 19-30092-MGM, 2024 WL 1093050, at *6-7 (D. Mass. Mar. 13, 2024) (Mastroianni, J.) (citing Liss, 450 Mass. at 479).

Here, YourBio re-published the Study indicating the Card's inferiority and lower accuracy compared to TAP II devices.  See Compl. ¶¶ 13, 22; see BioMed's Study 1, 8-9.  YourBio received a benefit from Advance through the redirection of Advance's clients and its reputation in the marketplace.  See Compl. ¶ 65, 66.

Advance, however, does not and could not have a reasonable expectation to receive compensation from YourBio.  Likewise, while receiving certain benefits associated with the re-publication and dissemination of the Study -- indicating the TAP II's superiority as an AMH measuring device over the Card --, YourBio could not have any knowledge of Advance's reasonable expectation to receive compensation from YourBio because that expectation did not exist.  Thus, following Metropolitan, although Advance allegedly conferred a measurable benefit upon YourBio, YourBio's benefit was not unjust.  Consequently, this Court dismisses the unjust enrichment claim (Count V).

6.    **Unfair Trade Practices in Violation of Chapter 93A, Section 11 of the Massachusetts General Laws (Count VI)**

The Massachusetts General Laws in relevant part provide that:

> [a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by [chapter 93A, section 2 of the Massachusetts General Laws] . . . may . . . bring an action in [a district court].

See Mass. Gen. Laws ch. 93A, § 11.  "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."  See Mass. Gen. Laws ch. 93A, § 2(a).

Here, Advance and YourBio, competitors in the market for at-home medical testing devices, sell and market products that test patients' level of AMH.  Compl. 1.  Thus, both Advance and YourBio are engaged in commerce.  See id. ¶¶ 71-72.

Also, Advance alleges that the statements contained in the Study -- indicating YourBio's TAP II's superiority as an AMH measuring device over Advance's Cards -- were false and deceived or had a tendency to deceive a substantial segment of YourBio's audience.  Id. ¶¶ 24, 27, 29, 32, 33, 43.  YourBio repeatedly promoted the Study to consumers, industry professionals, and third parties at trade shows and in YourBio's marketing

[34]

materials.  Id. ¶ 24.  Advance characterizes YourBio's conduct

as unfair and deceptive.  See id. ¶ 74.  Thus, YourBio's re-

publication and promotion of the Study constitute the use of

unfair methods of competition and a series of deceptive acts,

which are declared unlawful.  See Mass. Gen. Laws ch. 93A, §

2(a).

        Additionally, Advance alleges that YourBio's re-publication

of the Study has adversely and materially affected Advance's

reputation in the community as a provider of accurate and

reliable at-home AMH testing.  Compl. ¶¶ 33-34.  This indicates

that Advance suffered a reputational injury as a result of

YourBio's actions.

        Therefore, Advance may assert this claim against YourBio in

this Court.  See Mass. Gen. Laws ch. 93A, § 11.

        "[C]laims under the Lanham Act and [c]hapter 93A [of the

Massachusetts General Laws] rise and fall together . . . ."

Ferring Pharms., Inc. v. Braintree Lab'ys, Inc., 221 F. Supp. 3d

161, 167 (D. Mass. 2016) (Gorton, J).  "To establish a false

advertising claim under [c]hapter 93A [of the Massachusetts

General Laws], a plaintiff must prove all of the elements of a

false advertising claim under [s]ection 43(a) of the Lanham

Act."  Empire Today, LLC v. National Floors Direct, Inc., 788 F.

Supp. 2d 7, 26 (D. Mass. 2011) (Tauro, J.).  "Courts have held

that a plausible Lanham Act claim also states a [c]hapter 93A

[35]

claim." Williams-Sonoma, Inc. v. Wayfair, Inc., 652 F. Supp. 3d 216, 224 (D. Mass. 2023) (Saris, J.).

As concluded in Section III.B.2, supra, Advance properly asserted its false advertising claim under section 43(a) of the Lanham Act (Count II).  This indicates that the unfair trade practices claim brought under chapter 93A of the Massachusetts General Laws is also properly asserted.

In its response to the unfair trade practices claim, YourBio raises the same arguments it asserted regarding the false advertising claim (Count II).  Particularly, YourBio denies Advance's allegation as to the falsity of the information contained in the Study and argues that Advance fails to assert the fraudulent nature of the data underling the Study and improper application of the methodology by BioMed.  See Def.'s Mem. 19-20.  As stated in Sections III.B.1 and III.B.2, supra, these arguments ought be rejected because actual falsity or correctness of the Study is beyond this Court's consideration at the motion to dismiss stage.

YourBio further argues that Advance failed sufficiently to plead any harm caused by YourBio's re-publication of the Study.  See id. at 14, 20.  As stated in Section III.B.2, supra, this argument also has no merit due to Advance's allegation that its reputation in the community as a provider of accurate at-home AMH testing was affected by YourBio's conduct.  Compl. ¶¶ 33-34.

Additionally, YourBio argues that Advance fails to assert that YourBio's re-publication of the Study meets the elements of the test used by the First Circuit in <u>Massachusetts Eye & Ear Infirmary</u> v. <u>QLT Phototherapeutics, Inc.</u> and this Court in <u>Cognitive Edge Pte Ltd.</u> v. <u>Code Genesys, LLC</u> to adjudicate unfair trade practice claims under chapter 93A of the Massachusetts General Laws.  <u>See</u> Def.'s Mem. 19-20; <u>see also</u> <u>Massachusetts Eye & Ear Infirmary</u> v. <u>QLT Phototherapeutics, Inc.</u>, 412 F.3d 215, 243 (1st Cir. 2005); <u>Cognitive Edge Pte Ltd.</u> v. <u>Code Genesys, LLC</u>, No. 1:19-CV-12123-IT, 2021 WL 2829555, at *12 (D. Mass. Jan. 19, 2021) (Talwani, J.).

In <u>Cognitive Edge</u>, this Court held that "[i]n determining whether a practice violates Chapter 93A, [the factfinder] look[s] to '(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen).'"  <u>Cognitive Edge Pte Ltd.</u>, No. 1:19-CV-12123-IT, 2021 WL 2829555, at *12 (quoting <u>Massachusetts Eye & Ear Infirmary</u>, 412 F.3d at 243).

YourBio's argument fails in two respects.  First, Advance, in fact, alleges all of the facts that ought be analyzed in the application of the aforementioned test.  <u>See</u> Pl.'s Opp'n 14;

Compl. ¶ 82.  Second, as held by the <u>Cognitive Edge</u> Court, the stated elements of the test are analyzed by the factfinder. <u>Cognitive Edge Pte Ltd.</u>, No. 1:19-CV-12123-IT, 2021 WL 2829555, at *12.  Unlike in <u>Cognitive Edge</u>, the case at bar is at the motion to dismiss stage, at which no factfinding functions are conducted.  Hence, this Court does not scrutinize whether YourBio's conduct meets the elements of the test used by the <u>Cognitive Edge</u> Court.

Thus, Advance properly asserts the unfair trade practices claim in violation of chapter 93A, section 11 of the Massachusetts General Laws (Count VI).

**IV.   CONCLUSION**

As Advance states a plausible case for relief as to its defamation (Count I); false advertising (Count II); tortious interference with advantageous business relationships (Count III); commercial disparagement (Count IV); and unfair trade practices (Count VI) claims, this Court does not dismiss these claims.  Conversely, as Advance fails to state a plausible case for relief as to its unjust enrichment claim (Count V), this Court dismisses this claim.

Consequently, this Court **GRANTS** YourBio's motion to dismiss, ECF No. 16, only **in part** related to the unjust enrichment claim (Count V).  Otherwise, YourBio's motion to dismiss is **DENIED**.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[2]

---

[2] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.